IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BENJAMIN J. SUDLER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 09-430-LPS |
| | : | |
| CORRECTIONAL MEDICAL SERVICES, INC., | : | |
| | : | |
| Defendant. | : | |

Benjamin J. Sudler, Deceased, Pro Se Plaintiff.

James Edward Drnec, Esquire, Balick & Balick, LLC, Wilmington, Delaware, Attorney for Defendant.

**MEMORANDUM OPINION**

September 28, 2010
Wilmington, Delaware

STARK, U.S. District Judge

## I. INTRODUCTION

The Plaintiff, Benjamin J. Sudler ("Sudler"), was an inmate incarcerated at the James T. Vaughn Correctional Center in Smyrna, Delaware. The Delaware Department of Corrections ("DOC") recently informed the Court of Sudler's August 7, 2010 death and Defendant Correctional Medical Services, Inc. ("CMS") has filed a Suggestion of Death Pursuant to Fed. R. Civ. P. 25(a). (*See* D.I. 33, 35) Sudler filed this lawsuit pursuant to 42 U.S.C. § 1983 and appeared *pro se*. Pending before the Court are two Motions to Dismiss filed by Defendant CMS, two Requests for Counsel filed by Sudler, and a Motion for an Extension of Time filed by Sudler. (D.I. 25, 26, 27, 28, 29) For the reasons that follow, the Court will grant CMS' Motions to Dismiss and will deny Sudler's motions.

## II. BACKGROUND

Sudler filed his Complaint pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs. More particularly, he alleges that needed prescription medications are not administered in a timely manner; as of the June 2009 filing of his Complaint, he had been waiting since August 2007 to see a cardiologist; he was given two units of blood rather than the ordered four units; denial or delay in access to medical personnel; and failure by CMS to carry out medical orders.

CMS moves for dismissal of all claims barred by the two-year statute of limitations; all medical negligence claims; and, due to failure to exhaust administrative remedies, the heart specialist, blood unit, denial or delay of medical care, and failure to carry out medical order

1

claims. (D.I. 25, 29) Sudler did not respond to the Motion to Dismiss filed on February 19, 2010. Instead, on March 11, 2010, he filed a motion to extend his case for sixty days due to a hospitalization and subsequent stay in the infirmary. (D.I. 27) Sudler's motion will be denied as moot. CMS filed a second Motion to Dismiss on April 30, 2010 (D.I. 29), to which Sudler did respond (D.I. 30).

### III. REQUESTS FOR COUNSEL

Sudler requests counsel on grounds relating to the retirement of former United States District Judge Farnan. (D.I. 26, 28) A plaintiff in a civil suit does not have a constitutional or statutory right to an attorney. *See Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993); *see also Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (stating § 1915(d) – now § 1915(e)(1) – authorizes federal court to "request," but not require, unwilling attorney to represent indigent civil litigant). However, a district court may seek to obtain legal representation for an unrepresented plaintiff who demonstrates "special circumstances indicating the likelihood of substantial prejudice to [the plaintiff] resulting . . . from [the plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Tabron*, 6 F.3d at 154; *see also Mallard*, 490 U.S. at 296.

Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case, considering his or her education, literacy, experience, and the restraints

placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56.

After reviewing Sudler's Motions, the Court concludes that the case is not so factually or legally complex that a Court request for an attorney is warranted. The filings in this case demonstrated Sudler's ability to articulate his claims and represent himself. Finally, as noted above, Sudler is deceased and, at this juncture, it is unknown if there will be a substitution of party by his successor or representative pursuant to Fed. R. Civ. P. 25. Thus, in these circumstances, the Court will deny without prejudice Sudler's Requests for Counsel. (D.I. 26, 28)

### IV. MOTIONS TO DISMISS

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Sudler proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal citations omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). When determining whether dismissal is appropriate, the Court conducts a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief." *Id.* at 211; *see also Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. *Id.* A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

**B.** **Statute of Limitations**

4

CMS moves for dismissal of all claims that occurred prior to June 10, 2007 on the grounds that they are barred by the applicable limitation period. (D.I. 25) For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 275 (1983). In Delaware, § 1983 claims are subject to a two-year limitations period. *See* 10 Del. C. § 8119; *see also Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." *Johnson*, 925 F. Supp. at 248. Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed. *See Husain v. Abdallah*, 570 F. Supp. 2d 582, 587 (D. Del. 2008).

Here, the Complaint was filed-stamped on June 10, 2009. The computation of time for complaints filed by *pro se* inmates, however, is determined according to the "mailbox rule." In *Houston v. Lack*, 487 U.S. 266 (1988), the United States Supreme Court held that a prisoner's notice of appeal of a habeas corpus petition was deemed filed as of the date it was delivered to prison officials for mailing to the Court. While *Houston* dealt specifically with the filing of a habeas appeal, the decision has been extended by the Court of Appeals for the Third Circuit to other prisoner filings. *See Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998); *see also Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002) (applying mailbox rule to *pro se* § 1983 complaint).

Sudler's Complaint was signed on March 29, 2009, but the envelope it was mailed in is post-marked June 9, 2009. Therefore, Sudler's Complaint was delivered to prison authorities for mailing some time between March 29, 2009 and June 9, 2009. There is no explanation for the delay. Giving Sudler the benefit of the doubt, the Court concludes that Sudler's Complaint

5

should be deemed filed on March 29, 2009, the date it was signed (and therefore the earliest date possible it could have been delivered to prison officials for mailing). Accordingly, all claims raised by Sudler that occurred prior to March 29, 2007 are time-barred.[1]

For the above reasons, the Court will grant CMS' Motion to Dismiss the time-barred claims.

### C. Medical Negligence

To the extent Sudler alleges medical negligence pursuant to Delaware law, CMS moves for dismissal for Sudler's failure to comply with Delaware statutory requirements. (D.I. 25) In Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act. 18 Del. C. §§ 6801-6865. When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury. *See Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (citing *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)); 18 Del. C. § 6853. Sudler neither submitted an affidavit of merit by an expert witness at the time he filed his Complaint nor did he seek an extension of time to do so. 18 Del. C. § 6853(a)(1). Therefore, the Court will grant CMS' Motion to Dismiss the medical negligence claims.

---

[1] The Court's calculation and application of the mailbox rule makes no real difference to CMS' motion to dismiss claims that occurred prior to June 10, 2007. Sudler's last time-barred claim occurred on March 26, 2007, and nothing occurred between that date and October 21, 2007, when the next viable claim accrued. (*See* D.I. 2, exs.)

### D. Administrative Remedies

CMS moves to dismiss the following claims for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"): (1) failure to have Sudler seen by a cardiologist in August 2007; (2) giving Sudler two units of blood rather than four; (3) denying or delaying access to medical personnel; and (4) failure to carry out medical orders, thereby intentionally interfering with prescribed treatment. (D.I. 29) Sudler argues that he has exhausted his administrative remedies. In the alternative, to the extent he has failed to exhaust, he requests additional time to do so. He further argues that the DOC cannot provide him the remedy he seeks.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). CMS has the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. *See Ray v. Kertes*, 285 F.3d 287, 295-96 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Exhaustion means proper exhaustion; that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including

7

deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

"[P]rison grievance procedures supply the yardstick for determining what steps are required for exhaustion." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (internal quotation marks omitted). A futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 251 F. App'x 774, 776 (3d Cir. Oct. 19, 2007) (not published) (citing *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000)).

The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. *See Spruill*, 372 F.3d at 227-28; *Nyhuis*, 204 F.3d at 67. A grievance procedure is not available, even if one exists on paper, if the defendant prison officials somehow prevent a prisoner from using it. *See Mitchell v. Horn*, 318 F.3d 523 (3d Cir. 2003). If prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002).

DOC administrative procedures provide for a multi-tiered grievance and appeal process. First, the prisoner must file a grievance within seven days with the Inmate Grievance Chair, for an attempt at informal resolution. Second, if unresolved, the grievance is forwarded to the Grievance Resolution Committee for a determination, which is forwarded in turn to the Warden. Third, the Bureau Grievance Officer conducts the final level of review. More specifically, medical grievances are first forwarded to the medical services staff, which attempts an informal resolution of the matter. If this fails, the grievance goes to the Medical Grievance Committee,

which conducts a hearing. If the matter is still not resolved, the inmate may once again appeal. DOC Policy 4.4 (revised May 15, 1998).

The Complaint attaches as exhibits the various grievances filed by Sudler. CMS argues that none of the grievances mentioned the four claims identified above. The Court reviewed each exhibit attached to the Complaint. The record reflects that Sudler exhausted his administrative remedies only with respect to his claim that CMS did not administer prescription medications in a timely manner. There are no grievances directed to: (1) failure to have Sudler seen by a cardiologist in August 2007; (2) giving Sudler two units of blood rather than four; (3) denying or delaying access to medical personnel; or (4) failure to carry out medical orders. Sudler's numerous grievances make no mention of these issues. Sudler's grievances may have alerted officials to his medication issue claims, but they did not alert CMS to any other acts of unconstitutional conduct with regard to Sudler's medical care. *See Johnson v. Townsend*, 314 F. App'x 436, 442 (3d Cir. Aug. 7, 2008) (not published) (prisoner failed to satisfy PLRA administrative exhaustion requirements when grievance did not contain all his complaints, he did not complete grievance process, and he failed to name certain officials).

For the above reasons, the Court finds that Sudler did not exhaust his administrative remedies with regard to the four claims against CMS outlined above. Sudler's failure to comply with the exhaustion requirement of § 1997e(a) necessitates dismissal of the four above described claims. "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73. Therefore, the Court will grant the CMS' Motion to Dismiss (D.I. 29) for failure to exhaust administrative remedies.

9

## V. CONCLUSION

For the reasons stated above, the Court will grant CMS' Motions to Dismiss and will deny Sudler's Motions. The only claim that remains is the claim that prescription medications were not administered in a timely manner. An appropriate Order follows.